**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **D.H. PIERCE DESIGN ASSOCIATES, INC., d/b/a PIERCE ARCHITECTS, Plaintiff,** | |
| **v.** | **DOCKET NO: 05-11626 RWZ** |
| **D.L. COTE & COMPANY, LLC, and DEE L. COTE, in his Individual Capacity, Defendants.** | |

**MOTION OF D.H. PIERCE DESIGN ASSOCIATES, INC.**
**FOR ENTRY OF JUDGMENT**

Now comes the plaintiff, D.H. Pierce Design Associates, Inc. d/b/a Pierce Architects ("Pierce"), and moves this Court to enter judgment in its favor against the defendants, D.L. Cote & Company, LLC and Dee L. Cote (collectively "Cote"), jointly and severally in the amount of $$48,976.67, plus interest, costs, and attorneys fees, and return of Pierce's Design Documents. As grounds therefore, Pierce states as follows:

**A. <u>Amount Owed Under Agreement for Judgment</u>**

1. On August 4, 2005, Pierce initiated this action seeking, *inter alia*, protection of his copyright in certain architectural plans and specifications (the "Design Documents") and payment of fees owed for architectural services.

2. By letter agreement dated September 14, 2005, Pierce and Cote entered into a written settlement (the "Settlement Agreement"). A copy of the Settlement Agreement as executed by the parties is appended as **Exhibit 1**.

3. It was further agreed that if Cote failed to make the payments called for under the Settlement Agreement, Pierce could file with this Court an Agreement executed by Cote. A copy of the Agreement for Judgment is appended as **Exhibit 2**.

4. Under the terms of the Settlement Agreement, Cote owed Pierce the principal amount of $95,000.00. Settlement Agreement, paragraph 1.

5. In addition, if Cote did not pay Pierce in full by March 31, 2006, Cote owed Pierce an additional $5,000.00. Settlement Agreement, paragraph 6.

6. Cote made payments to Pierce totaling $77,535 as follows:

| | |
|---|---|
| First Installment | ($24,167.00) |
| Second installment | ($40,668.00) |
| Third installment | ($12,700.00) |

7. Accordingly, Cote owes Pierce $22,465.00 for principal amount due under the Agreement for Judgment.

## B. Additional Amount Owed under Settlement Agreement and Extensions

8. In addition to the principal amount owed, Cote was obligated to pay Pierce's carrying costs for a line of credit until such time as the principal amount was paid. Settlement Agreement, paragraphs 4, 6.

9. Pierce has incurred carrying costs totaling $5,641.21.

10. By agreement of the parties, and subject to certain additional terms, the parties entered into a written agreement extending the time for Cote to perform under the Settlement Agreement from October 1, 2006 until April 1, 2007 (the "Extension Agreement"). A copy of the Extension Agreement is appended as **Exhibit 3**.

11. Under the terms of the Extension Agreement, Cote was to pay Pierce an additional $5,000.00 on top of the next payment owed. Extension Agreement, paragraph 2.

12. Cote was also to pay Pierce still a further $5,000.00 if payment of all amounts owed were not made by April 1, 2007.

13. Cote failed to pay Pierce the additional $5,000.00 owed in the next payment due, and failed to make payment of all monies owed by April 1, 2007.

14. Additionally, on August 24, 2006, Pierce agreed to permit the sale of a condominium unit at the Property and release his mortgage on that unit even though Cote was not going to pay Pierce what it was owed from the proceeds of that sale. This agreement was in exchange for Cote's agreement to pay Pierce his carrying costs for an open line of credit and attorneys fees associated with negotiation of amounts to be distributed from the sale of the second unit at the Property, which totaled $1,032.43. This was memorialized in an e-mail agreement between counsel for the parties (the "E-Mail Agreement"). A copy of the E-Mail Agreement is appended as **Exhibit 4**.

15. Accordingly, Cote owes Pierce an additional $16,673.64 above and beyond the principal amount due.

## C. Additional Amount Owed Under Promissory Note

16. Cote's obligations to Pierce were secured by a Promissory Note and Mortgage on property located at 7 Winter Street, Salem, Massachusetts (the "Property") in

favor of Pierce.  A copy of the Promissory Note is appended as **Exhibit 5**, a copy of the Mortgage is appended as **Exhibit 6.**

17.  In exchange, Pierce executed a Limited License Agreement allowing Cote to use the Design Documents as long as he was compliant with the terms of the Settlement Agreement.

18.  Under the terms of the Promissory note:

In the event that any payment of interest and/or principal required hereunder shall remain unpaid for a period exceeding 15 days from the time such payment shall be due, the makers, endorsers and guarantors or other parties to this note shall, except as limited by law, pay a "late charge" of five percent (5%)  of the installment so overdue.

Promissory Note

19.  Under the terms of the Promissory Note, Pierce was supposed to receive $36,667.00 from the sale of the first unit at the Property ($31,667.00 as the first payment plus $5,000 for not making payment in full by March 31, 2006, Settlement Agreement paragraphs 2, 6).  However, following the sale of the first unit at the Property, Pierce received payment from Cote of only $24,167.00.

20.  Cote did not pay Pierce the remaining amount of the first installment owed within 15 days, which triggered the 5% penalty under the Promissory Note.  Accordingly, Cote owed Pierce an **additional** $1,833.35 (5% of $31,667.00).

21.  Under the terms of the Promissory Note, Pierce was supposed to receive $50,999.35 from the sale of the second unit at the Property ($33,666.00 per the Settlement Agreement, $12,500.00 from the shortfall from the first payment due, and $1,833.35 late payment penalty from the first payment due).   However, following the sale of the second unit at the Property, Pierce received payment of only $40,668.00 toward the amount owed by Cote.

22.  Cote did not pay Pierce the remaining amount of the second installment owed within 15 days, which again triggered the 5% penalty under the Promissory Note.  Accordingly, Cote owed Pierce an **additional** $2,549.96 (5% of $50,999.35).

23.  Under the terms of the Promissory Note, Pierce was supposed to receive $55,579.34 from the sale of the third unit at the Property ($31,666.00 per the Settlement Agreement, $10,331.35 from the shortfall from the second payment due, $2,549.96 late payment penalty from the second payment due, $1,032.43 for additional carrying costs and attorneys fees as agreed by Cote's counsel, $5,000.00 for failure to make full payment of monies owed to Pierce for the second payment , per the Extension Agreement, and $5,000.00 for failure to make all payments owed by April 1, 2007, also per the Extension Agreement).  However, following the sale of the third unit at the Property, Pierce received payment of only $12,700.00 toward the amount owed by Cote.

24. Cote did not pay Pierce the remaining amount of the third installment owed under within 15 days, once again triggering the 5% penalty under the Promissory Note. Accordingly, Cote owed Pierce an **additional** $2,727.36 (5% of $54,547.31).

25. Under the terms of the Promissory Note, Cote was to have made all payment to Pierce of all monies owed by April 1, 2007.[1]

26. As of April 1, 2007, Cote owed Pierce $55,579.34 (the principal amount, less amounts paid, plus additional agreed amounts and penalties.

27. Cote did not pay Pierce this amount within 15 days of the date due under the Promissory Note, yet again triggering the 5% penalty under the Promissory Note. Accordingly, Cote owed Pierce an **additional** $2,727.36 (5% of $54,547.31).

28. Accordingly, Cote owes Pierce an additional $9,838.03 in late penalties above and beyond all other amounts due.

## D. Default Under the Mortgage

29. On or about September 28, 2007, Pierce received notice that another party holding a mortgage on the Property, Gloucester Cooperative Bank, was foreclosing on its mortgage on the Property, which violated the terms of the Mortgage.

30. The Property was sold to Gloucester Cooperative Bank at a foreclosure sale. As a result of other mortgages which took precedence over the Mortgage, no funds were available from the foreclosure sale to satisfy any portion of the remaining monies owed to Pierce by Cote.

31. Cote has not made any further payments to Pierce under either the Settlement Agreement or the Note.

32. In conformance with the terms of the Settlement Agreement, on October 10, 2007, Pierce provided notice to Cote of default under the Settlement Agreement, Note, and Mortgage, providing the requisite 7 days notice to pay the remaining balance owed to Pierce under the Settlement Agreement and Extension Agreement. A copy of the Notice of Default is appended as **Exhibit 7**.

33. More than 7 days has lapsed since notice of default has been given, and Cote has failed to make any further payments to Pierce.

## E. Costs and Attorney Fees

34. Under the terms of the Promissory Note, Cote is responsible for payment of all costs and attorneys fees incurred by Pierce in connection with the collection of monies owed under the Promissory Note.

---

[1] In actuality, the Promissory Note provides that all payments were to be made by October 1, 2006. However, Pierce recognizes that it was the intention of the parties to have the time for payment under the Promissory Note track the Settlement Agreement. As time for payment under the Settlement Agreement was extended to April 1, 2007, even though there was no corresponding extension of time for payment under the Promissory Note, Pierce agrees that the latter date should control Cote's obligations under the Promissory Note.

35. Accordingly, if such costs and fees are awarded, Pierce requests leave to submit an affidavit of costs and counsel fees within such time as directed by the Court.

## F. Conclusion

Based on the terms of the Settlement Agreement, Extension Agreement, Promissory Note, and E-Mail Agreement, Cote owes Pierce $48,976.67, calculated as follows:

- $22,465.00 for principal amount due under the Agreement for Judgment;
- $16,673.64 for additional monies owed for extensions of the Settlement Agreement; and
- $9,838.03 in late penalties.

WHEREFORE, Pierce moves this Court to enter judgment in its favor against Cote, awarding Pierce:

A. The sum of $48,976.67;

B. Its costs and attorneys fees incurred by Pierce in connection with the collection of monies owed by Cote;

C. The return of all copies of the Design Documents, in any form; and

D. Such other relief as this Court deems just and appropriate.

Respectfully submitted,

D.H. Pierce Design Associates, Inc.,

By its attorneys,

/s/sbolotin
Steven J. Bolotin, BBO# 564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617)-439-7500

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 21, 2007.

/s/sbolotin
Steven J. Bolotin

# EXHIBIT 1

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

RHODE ISLAND
PROVIDENCE

CONNECTICUT
HARTFORD

NEW YORK
NEW YORK

NEW JERSEY
PARSIPPANY

ENGLAND
LONDON

Steven J. Bolotin
Direct Dial: 617-737-8878
Direct Fax: 617-342-4943
sbolotin@morrisonmahoney.com

September 14, 2005

*Via Facsimile*

George Atkins, Esq.
Ronan, Segal & Harrington
59 Federal Street
Salem, MA 01970

Re: Pierce Architects v. D.L. Cote, LLC
USDC No. 2005-11626

Dear George:

Per our conversations of today, here is the revised understanding of the terms of the settlement of the above referenced matter:

1. Cote will give Pierce a mortgage on the property known as The Leavitt House Condominiums located at 7 Winter Street in Salem, Massachusetts (the "Property") in the amount of $95,000 (the "Mortgage"), in a standard Massachusetts Realtor's form which Pierce shall be permitted to record immediately.

2. Cote will give Pierce a note in the amount of $95,000, with no interest (the "Note"). The Note shall be due in three installments of $31,667.00, 31,666.00, and $31,666.00, each installment to be made within 14 days of the closing of the sale of any unit at the Property (the "Installment Payments"), but in no event later than October 1, 2006.

3. Cote will also execute an Agreement for Judgment in the above referenced matter in the amount of $95,000, which will be held in escrow by counsel for Pierce, and which will not be filed except in the event of a default under the Mortgage or Note, and then only after 7 days written notice to counsel for Cote to permit an opportunity to cure. Upon final payment to Pierce, the original agreement for Judgment shall retuned to counsel for Cote or destroyed.

4. From the date hereof until such time as final payment is made to Pierce under the Note and the terms of the settlement of this matter, Cote will pay Pierce $167.00 per month representing the carrying cost on the variable interest rate on Pierce's outstanding line of credit (the "Carrying Cost Payment").

5. If there is a refinance on the Property, Cote will pay Pierce the outstanding balance of the $95,000 Note and any portion of the Carrying Cost then outstanding within 14 days of the closing on that refinancing.

6. If the Note is not paid in full by March 31, 2006, Cote agrees to add an additional $5,000.00 to the next Installment Payment due under the Note. Additionally, Cote agrees to increase the Carrying Cost Payment to equal any increase in the carrying cost incurred by Pierce due to an increase in interest rates.

7. The parties shall ask the Court to stay the above referenced litigation until either the Note is fully paid or the Agreement for Judgment is filed in the event of a default.

8. The parties shall execute mutual general releases upon final payment to Pierce, and providing for mutual confidentiality and non-disparagement.

9. Pierce shall provide Cote with a limited license in the form previously agreed to by the parties appended hereto as Exhibit 1 with respect to the design documents for the Property.

Please advise me immediately if any terms are not agreed upon. Once advised that this is acceptable to your client, I will ask the Court to continue the hearing scheduled for tomorrow, and instead ask that we be permitted to report back on the status of the settlement in 60 days. when the original litigation conference was scheduled.

Very truly yours,

<signature: sbolotin>

Steven J. Bolotin

SJB/sjb
Agreed without reservation:

Dee L. Cote, individually and for D.L. Cote LLC

Daniel H. Pierce for Pierce Architects

EXHIBIT 1

## LIMITED LICENSE AGREEMENT

This LIMITED LICENSE is given as of the ______ day of ___________ by D. H. Pierce Design Associates, Inc. d/b/a Pierce Architects, located at 214 Derby Street, Salem, Massachusetts (collectively "Pierce") to D.L. Cote & Company, LLC, located at 3 Parker Court in Salem, Massachusetts ("Cote").

**INSTRUMENTS OF SERVICE:**

The Instruments of Service prepared by Pierce associated with the renovation of the building known as The Leavitt House Condominiums located at 7 Winter Street in Salem, Massachusetts (the "Project), including, but not limited to, the Construction Documents dated 18 June 2004, all drawings, designs, plans, and specifications (collectively the "Design Documents")

**LICENSE / LIMITATION ON USE:**

Upon execution of this Limited License Agreement and compliance with all terms of the Settlement Agreement "Pierce' shall grant to "Cote" a non-exclusive license to use the Design Documents. Cote shall have no right or ability to assign this Limited License to any third party, or to use the Design Documents in connection with any activity other than the completion and operation of the Project. Completion of the Project shall expressly include construction of the Carriage House pursuant to the Design Documents. Cote agrees that such use shall be solely at Cote's risk and at his sole liability. No license is granted for any other or additional uses, including but not limited to uses to design or construction by others of future phases of the Project, distinct extensions of the Project, additions or modifications to the Project, or for design or construction of other projects by anyone. Nothing herein shall be deemed **a** transfer of ownership or copyright in the Design Documents. Pierce does not waive, and expressly reserves, all rights to the Architect's Design Documents, including the copyright and other statutory protections under state or federal law.

Pierce makes no certifications, representations, warranties, or guarantees relating to the Architect's Design Documents including, but not limited to, assertions relating to the completeness, accuracy, or fitness of the Design Documents for use by Cote or any third party.

**RELEASE / LIMITATION OF LIABILITY**

To the fullest extent permitted by law, "Cote" agrees to release and hold "Pierce" and Pierce's consultants and agents and employees of any of them harmless from and against all liability, claims, damages, losses, costs, and expenses, including but not limited to attorneys' fees and reasonable expenses of investigating, defending, mediation, and/or prosecuting litigation, arising out of, resulting from, or incidental to "Cote's" use of the Design Documents pursuant to the Limited License provided hereby.

Agreed to without reservation after consultation with legal counsel.

____________________________________ __________________

D.L. Cote & Company, LLC Date
By: Dee L. Cote, President

____________________________________ __________________

D. H. Pierce Design Associates, Inc. Date
By: Daniel H. Pierce, President

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **D.H. PIERCE DESIGN ASSOCIATES, INC., d/b/a PIERCE ARCHITECTS, Plaintiff,** | |
| **v.** | **DOCKET NO: 05-11626 RWZ** |
| **D.L. COTE & COMPANY, LLC, and DEE L. COTE, in his Individual Capacity, Defendants.** | |

**AGREEMENT FOR JUDGMENT**

NOW COME the defendants in the above-entitled Action, D.L. COTE & COMPANY, LLC, and DEE L. COTE (individually and collectively "Cote"), and agree that Judgment shall enter pursuant to the terms of the Settlement Agreement executed by the parties dated September 14, 2005, as follows:

1. Judgment for Plaintiff, D.H. PIERCE DESIGN ASSOCIATES, INC., d/b/a PIERCE ARCHITECTS, on the agreed amount for design professional fees, less any payments made toward those fees, of $95,000 if this Agreement for Judgment is filed prior to March 31, 2006, and $100,000 if this Agreement for Judgment is filed after March 31, 2006.

2. Judgment for Plaintiff, D.H. PIERCE DESIGN ASSOCIATES, INC., d/b/a PIERCE ARCHITECTS, on the agreed Carrying Costs as calculated pursuant to the terms of the Settlement Agreement executed by the parties dated September 14, 2005.

3. Cote agrees that the court shall immediately, this date, issue an Execution for the full amount of the Judgment.

4. Cote agrees that this Agreement for Judgment shall be binding on his heirs, issue, kindred, beneficiaries, assigns, successors, estate representatives, estate fiduciaries, legal representatives and/or legal fiduciaries as well as any corporate successors.

5. This Agreement for Judgment does not alter, negate, or otherwise affect any other remedies available to the Plaintiff under either the Note or Mortgage executed by Cote in favor of the plaintiff, and the Plaintiff does not waive, and may pursue, all available remedies therein to procure and/or secure payment of its outstanding balance if the Judgment amount is not paid within 10 days of the filing hereof.

1131285v1

6. This Agreement shall be interpreted and enforced under the laws of the Commonwealth of Massachusetts exclusively, and in the courts of the Commonwealth of Massachusetts, exclusively.

**If any provision of this Agreement is declared void or unenforceable, the other provisions herein shall remain in full force and effect.**

The Plaintiff,

**D.H. PIERCE DESIGN ASSOCIATES, INC., d/b/a PIERCE ARCHITECTS**
By its Attorney,

Steven J. Bolotin, B.B.O. #564085
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

The Defendants,

**DEE L. COTE, in his Individual Capacity and on behalf of D.L. COTE & COMPANY, LLC**

Dee L. Cote

Accepted by:
D.H. Pierce Design Associates, Inc.
d/b/a Pierce Architects

Daniel H. Pierce

# EXHIBIT 3

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

RHODE ISLAND
PROVIDENCE

CONNECTICUT
HARTFORD

NEW YORK
NEW YORK

NEW JERSEY
PARSIPPANY

ENGLAND
LONDON

Steven J. Bolotin
Direct Dial: 617-737-8878
Direct Fax: 617-342-4943
sbolotin@morrisonmahoney.com

October 30, 2006

George Atkins, Esq.
Ronan, Segal & Harrington
59 Federal Street
Salem, MA 01970

Re: Pierce Architects v. D.L. Cote, LLC, USDC No. 2005-11626

Dear George:

In furtherance of our discussion of October 26, 2006, this letter is to present the terms upon which my client, Pierce Architects ("Pierce") agrees to the proposed distribution of proceeds from the second unit sale (Unit 5) of The Leavitt House Condominiums located at 7 Winter Street in Salem, Massachusetts (the "Property"), which provides for Pierce to receive $40,668.00 from the sale of Unit 5 of the Property:

1. Pierce will extend the existing settlement agreement ("Settlement Agreement") between Pierce and Dee Cote/D.L. Cote, LLC ("Cote") until April 1, 2007, which is six (6) months from the original date final payment was due, and not to foreclose on the mortgage provided to Pierce by Cote.

2. In **addition** to the monies which remain owing to Pierce following the sale of Unit 5 of the Property, Cote will pay Pierce an additional $5,000 as part of the distribution to Pierce from the next unit sale at the Property.

3. Cote will continue to pay Pierce its continued carrying costs, and in addition will pay Pierce's reasonable attorneys fees associated with the extensions to the Settlement Agreement as part of the distribution to Pierce from the next unit sale at the Property. At present, those numbers stand as follows:

| | |
|---|---|
| Carrying costs per the Settlement Agreement: | $2,982.07 |
| Pierce attorney fees for settlement extensions | $ 500.00 |

However, it is understood that these numbers will increase, depending upon the time the next unit sale occurs and whether further extensions or revisions to the settlement agreement are required. Pierce will provide an accounting of these amounts upon being advised of the date of the next unit sale.

4. If Pierce is not paid in full by April 1, 2007, Cote agrees that he/it owes Pierce an additional $5,000.

If these terms are acceptable, please have your client sign below. We will then provide a letter similar to the one we executed last time for the closing. If these terms are not acceptable, please contact me.

Very truly yours,

Steven J. Bolotin

SJB/sjb
cc: Daniel H. Pierce, AIA

Agreed without reservation:

Dee L. Cote, individually and for D.L. Cote LLC

# EXHIBIT 4

**Bolotin, Steven**

---

**From:** George Atkins [gwa@ronansegal.com]

**Sent:** Thursday, August 24, 2006 4:35 PM

**To:** Bolotin, Steven

**Subject:** Pierce v Cote

Steve: In accordance with our discussions I have reviewed the terms of an amended agreement with Mr. Cote and he has authorized me to represent his agreement to the payment of the following amounts from the proceeds of the second unit sale: (1) the sum of $7500 representing the reduction from the amount due at the first unit sale; (2) the sum of $5,000 due under the agreement for nonpayoff by March 2006; and (3) carrying costs and reasonable attorney fees in connection with this amendment.

George W. Atkins III, Esquire
Ronan, Segal & Harrington
59 Federal Street
Salem, MA 01970
978-744-0350 ext. 107
978-744-7493 fax.

# EXHIBIT 5

# PROMISSORY NOTE

$95,000.00

Salem, Massachusetts

**FOR VALUE RECEIVED,** the undersigned D. L. Cote & Company, LLC(the "Maker"), promises to pay to Daniel H. Pierce Design Associates, Inc. (the "Holder"), OR ORDER, the principal sum of Ninety Five Thousand and 00/100 **($95,000.00) DOLLARS** with no interest payable as follows:

Three installments of $31,667.00, $31,667.00, and $31,666.00 each, such installments to be paid on or before the expiration of fourteen (14) days following receipt of good funds by the Maker in consideration of recording deeds conveying each of the first three (3) units of the Leavitt House Condominium, 7 Winter Street, Salem, MA to bona fide purchasers plus the carrying costs identified in the settlement agreement dated September 14, 2005.

Notwithstanding the sale of units there shall be due and payable to the Holder or order on the 1st day of October, 2006, the principal balance remaining.

This note may be prepaid in whole or in part at any time without penalty of any kind.

Failure to pay any of said installments within 30 days from the date when the same becomes due shall make the whole of the balance of said principal sum immediately due and payable without notice at the option of the holder and shall not constitute a waiver of the right to exercise the same in the event of any subsequent or other default.

In the event that any payment of interest and/or principal required hereunder shall remain unpaid for a period exceeding 15 days from the time such payment shall be due, the makers, endorsers and guarantors or other parties to this note shall, except as limited by law, pay a "late charge" of five percent (5%) of the installment so overdue.

Each maker, co-maker, endorser or guarantor of this note hereby agrees to pay all costs, charges and expenses of collection, including reasonable attorney's fees, in the event this note is placed into the hands of any attorney for collection or enforcement hereof.

The makers, endorsers and guarantors or other parties to this note, and each of them severally waive demand, notice and protest, and assent to any extensions of time for payments or other indulgences.

WITNESS the hands and seals of the undersigned on the 15th day of November, 2005.

Witness

D.L. COTE & COMPANY, LLC

By: ______________________
Dee L. Cote, Manager

# EXHIBIT 6

MORTGAGE

D. L. COTE & COMPANY, LLC a Massachusetts limited liability company of 3 Parker Court, Salem, Essex County, Massachusetts, (hereinafter "Mortgagor"), for consideration paid, hereby grant to DANIEL H. PIERCE DESIGN ASSOCIATES, INC. of 214 Derby Street, Salem, MA 01970 (hereinafter "Mortgagee") with MORTGAGE COVENANTS to secure the payment of a Note dated October ,2005 in the amount of NINETY FIVE THOUSAND AND 00/100 ($95,000.00) DOLLARS the terms of which Note are incorporated herein by reference, the real estate situated in the City of Salem County of Essex, Commonwealth of Massachusetts and known as 7 Winter Street more particularly bounded and described as shown on SCHEDULE A DESCRIPTION attached hereto and made a part hereof.

Subject to a First Mortgage to from D. L. Cote & Company, LLC to Gloucester Cooperative Bank dated December 4, 2003 and recorded on December 4, 2003 with the Essex South District Registry of Deeds in Book 22155, Page 319, as amended by Amendment of Mortgage dated October 29, 2004 and recorded on November 1, 2004 with said Deeds in Book 23572, Page 152.

Subject to a Second Mortgage from D. L. Cote & Company, LLC to Richard Brunelle and Robert Zakian dated February 22, 2005 and recorded on February 23, 2005 with said Deeds in Book 23979, Page 1.

Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property".

The Mortgagor will not sell, transfer, lease, convey, mortgage, or otherwise voluntarily encumber said premises, or any part thereof during the term of the note which this mortgage secures nor during any additional time in which the balance due thereon is unpaid, except with the written consent of the Mortgagee and for breach hereof the entire unpaid balance shall become due and payable at the option of the Mortgagee.

This mortgage shall also secure the repayment of such other and future advances as the Mortgagee may, from time to time, for any purpose, make to the Mortgagor and the same shall be added to the mortgage debt.

Also, insofar as the same are, or can by agreement of the parties be made a part of the realty, all of the following articles now or hereafter on the above-described premises or used therewith; portable or sectional buildings; bathroom, plumbing, heating, lighting, refrigerating, ice-making, ventilating, and air-conditioning apparatus and equipment; garbage incinerators and receptacles; elevators and elevator machinery; boilers, stoves; tanks; motors; sprinkler and fire extinguishing

systems; door bell and alarm systems; window shades; screens; awnings; screen doors, storm and other detachable windows and doors; mantels; built-in cases, counters, closets, chests of drawers and mirrors; trees, hardy shrubs and perennial flowers; and other fixtures whether or not included in the foregoing enumeration.

This mortgage is upon the STATUTORY CONDITION and is also upon the following other conditions which shall be binding on the Mortgagor and those claiming under them.

The Mortgagor shall keep the buildings now or hereafter standing on said premises insured against loss by fire and against other casualties and contingencies when required by the holder hereof in a sum and in a company or companies satisfactory from time to time to the holder of this mortgage, all such insurance to be for the benefit of and payable in case of loss to such holder.

The Mortgagor will keep all and singular the said premises in such repair, order and condition as the same are now in, or may be put in while this mortgage is outstanding. The Mortgagor shall not permit or suffer any violation of any law or ordinance affecting the mortgaged premises.

If the debt hereby secured shall not be paid when due, the holder hereof shall be entitled to thirty (30) days' notice in writing before payment, unless foreclosure proceedings have been begun. If any default in any condition of this mortgage, or of any prior mortgage on the granted premises, shall exist for more than fifteen (15) days, the entire debt shall thereby become due and payable at the option of the holder hereof. If foreclosure proceedings have been begun hereunder, the holder hereof shall be entitled to collect all costs, attorney's fees, charges and expenses incurred up to the time of payment. In case of a foreclosure sale, the holder hereof shall be entitled to retain one per centum of the purchase money in addition to all costs, attorney's fees, charges and expenses.

The Mortgagor covenants with the holder that the Mortgagor will faithfully and punctually perform all the covenants and agreements contained in any prior recorded mortgage on the granted premises.

The Mortgagor agrees that no sale of the premises hereby mortgaged or forbearance on the part of the holder, and no extension, whether oral or in writing, of the time for the payment of the whole or any part of the debt hereby secured or any other indulgence given by the holder to any persons other than the Mortgagor, shall operate to release or in any manner affect the original liability of the Mortgagor, notice of any such extensions or indulgences being waived.

The Mortgagor hereby authorizes the holder in the sole discretion of the holder to make all payments under any prior mortgage and to pay taxes, assessments and water rates, with interest, costs and charges accrued thereon, which may at any time be a lien upon the mortgaged premises or any part thereof, to pay the premiums for any insurance required hereunder, to incur and pay reasonable expenses in protecting holder's rights hereunder and the security hereby granted, to pay any balance due under any conditional agreement on or sale of any articles and fixtures included as a part of the mortgaged premises, to add all amounts so paid to the principal sum secured hereby

and to apply to any of these purposes or to the repayment of any amounts so paid by the holder any sums paid hereby by the Mortgagor as interest or otherwise.

The Mortgagor further covenants and agrees that in case any default in any condition of this mortgage shall occur, the holder, to cure such default, may apply any deposits or any sums credited by or due from the holder to the Mortgagor (without first enforcing any other rights of the holder against the Mortgagor, against any endorser or guarantor of the mortgage note, or against the mortgaged premises), and that if this mortgage shall be only a part of the security for the aforesaid indebtedness of the Mortgagor, nothing herein shall be construed to require the holder in the event of default, to look to any of said other security for said indebtedness, but the holder shall have full right to pursue all remedies to foreclose the security hereof, whether or not any said remedies shall be pursued alone or in conjunction with any foreclosure of any of said other security, and the full proceeds hereof may be applied against the said indebtedness without first applying any of the said other security or any proceeds thereof.

The Mortgagor covenants that if the premises covered hereby, or any part thereof, shall be damaged by fire, or other hazard against which insurance is held as herein provided, the amounts paid by any insurance company pursuant to the contract of insurance shall, to the extent of the indebtedness then remaining unpaid, and subject to the rights of the holders of any prior recorded mortgages, be paid to the holder, and at holder's option, may be applied to the debt or released for the repairing or rebuilding of the premises (hereby granting to the holder, in the event of foreclosure full authority as attorney irrevocable of the Mortgagor to cancel such insurance and retain the return premiums thereof.)

The Mortgagor covenants to make equal monthly payments to the holder sufficient to amortize the amount (estimated by the holder of all taxes and assessments laid against the mortgaged premises, within a period ending one month prior to the due date of such taxes and assessments. So long as Mortgagor shall make sufficient monthly payments (such sufficiency to be determined by the holder) of such taxes to the holder of a prior recorded mortgage, the covenant of the Mortgagor with respect to said monthly payments of taxes shall be deemed to have been performed.

The Mortgagor further agrees that this mortgage is given as collateral security for all obligations of the makers, guarantors and endorsers of the aforementioned note to the holder thereof, whether direct or indirect, absolute or contingent, primary or secondary, joint or several, now existing or which may arise hereafter, and that any breach or default in the provisions of this mortgage or the note or other obligations which it secures shall be deemed a breach of any other note or mortgage then held by the holder hereof, on which any of said parties is liable.

The Mortgagor covenants that in case the holder, in the exercise of the power of sale herein given, elects to sell in parcels, said sale may be held from time to time and that the said power of sale shall not be exhausted until all of the granted premises not previously sold shall have been sold.

The Mortgagor covenants that in case the holder, in the exercise of the power of sale herein

given, elects to sell in parcels the premises then subject to this mortgage, such holder may sell all of the parcels then subject to this mortgage, notwithstanding that the proceeds of such sales may exceed the sum of money then secured hereby.

The word "holder" as used herein shall be construed as descriptive of the Mortgagee named herein and of any subsequent holder or holders hereof; the word "Mortgagor" as used herein shall be construed as descriptive of the Mortgagor or Mortgagors named herein and of any subsequent owner or owners of the equity of redemption of the mortgaged premises; and all of the covenants and agreements of the Mortgagor herein contained are joint and several if the Mortgagor is more than one person and shall be binding upon the heirs, executors, administrators, successors and assigns of the Mortgagor.

This Mortgage is upon the STATUTORY CONDITION and if there is a conveyance or further encumbrance of any portion of the premises described in this mortgage or a transfer of any interest therein, the Mortgagee may, at its option, make the unpaid balance of the note secured hereby immediately due and payable without notice or demand. This Mortgage is also upon the condition that all covenants and agreements of Mortgagor in the note, this mortgage, all other instruments executed in connection therewith and in all other mortgages, debts, and obligations of or from Mortgagor to or for the benefit of Mortgagee shall be kept and fully performed, and upon any breach of the same, Mortgagor shall have the STATUTORY POWER OF SALE and any other powers given by statute.

The Mortgagor further covenants that it will perform all the covenants and requirements of any Mortgages on the granted premises senior to this mortgage, and that if the Mortgagor shall default or breach any of the conditions or requirements of the aforesaid, then the mortgage note for which this mortgage is collateral shall become due and payable forthwith at the option of the holder hereof.

WITNESS my hand and seal this 15th day of ~~October~~ November, 2005

D. L. COTE & COMPANY, LLC

Witness

Dee L. Cote, Manager

COMMONWEALTH OF MASSACHUSETTS

Essex, ss.

On this 15th day of ~~October~~ November, 2005, before me, the undersigned notary public, personally appeared Dee L. Cote, proved to me through satisfactory evidence of identification, i.e., a Massachusetts driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily ~~for its~~ stated purpose as Manager of D.L. Cote & Company, LLC.

Notary Public
My commission expires:

GEORGE W. ATKINS, III
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 16, 2012

EXHIBIT A

The land together with the buildings thereon situated at and known as 7 Winter Street, Salem, Essex County, Massachusetts, as shown on a plan entitled, "Plan of Land 3 & 7 Winter Street" prepared by North Shore Survey Corporation dated November 29, 1999 and recorded with the Essex South District Registry of Deeds in Plan Book 340, Plan 78 (hereinafter "Plan") and bounded and described as follows:

| | |
|---|---|
| SOUTHWESTERLY | by Winter Street, sixty two and 77/100 (62.77) feet; and |
| NORTHWESTERLY | by Lot 1 as shown on said Plan on two courses, ninety three and 65/100 (93.65) feet, and forty two and 92/100 (42.92) feet; and |
| NORTHEASTERLY | by said Lot 1 as shown on said Plan sixty three and 46/100 (63.46) feet; and |
| NORTHWESTERLY | by land now or formerly of Dunham twenty eight and 25/100 (28.25) feet; and |
| NORTHEASTERLY | by land now or formerly of Wilkison, Parker Court and and now or formerly of Cote ninety four and 18/100 (94.18); and |
| SOUTHEASTERLY | by land now or formerly of said Cote thirty six and 70/100 (36.70); and |
| NORTHEASTERLY | on two courses by land now or formerly of said Cote nineteen and 10/100 (19.10) feet and land now or formerly of Sabine and Sturner fifty and 80/100 (50.80) feet; and |
| SOUTHEASTERLY | on two courses by land now or formerly of Savickey forty nine and 56/100 (49.56) feet and by land now or formerly of Huntington one hundred forty eight and 94/100 (148.94) feet. |

Consisting of Lots 2 and 3 as shown on said Plan and containing 17,724 square feet more or less.

# EXHIBIT 7

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

Steven J. Bolotin
Direct Dial: 617-737-8878
Direct Fax: 617-342-4943
sbolotin@morrisonmahoney.com

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER
CONNECTICUT
HARTFORD
ENGLAND
LONDON

NEW HAMPSHIRE
MANCHESTER
NEW JERSEY
PARSIPPANY
NEW YORK
NEW YORK
RHODE ISLAND
PROVIDENCE

October 10, 2007

***Via Certified Mail***

George Atkins, Esq.
Ronan, Segal & Harrington
59 Federal Street
Salem, MA 01970

Re: Pierce Architects v. D.L. Cote, LLC, et al.

Dear Attorney Atkins:

As you are aware, pursuant to the settlement agreement and note executed by your client dated September 14, 2005, as extended by subsequent agreements (collectively, the "Settlement Agreement"), payment of the remaining balance owed by your client was due on April 1, 2007. Payment was not received as of that date, and no further extension has been agreed by our respective clients. Further, we are in receipt of a notice of foreclosure on the property located at 7 Winter Street, Salem, Massachusetts. As such, your client is in default of the Settlement Agreement and the mortgage granted as security for the payments called for thereunder.

As we advised in our correspondence of August 27, 2007, the balance then owed by your client to Pierce was **$38,358.71**. Since that time, the amount has increased to **$39,401.78** as the result of additional interest charges in the amount of $539.07 and legal fees in the amount of $450.00 for which your client is responsible under the terms of the Settlement Agreement. Pursuant to Paragraph 3 of the original Settlement Agreement, your client has seven (7) days to make payment of this amount. Thereafter, we shall reinstate the litigation between our clients and file the Agreement for Judgment executed by your client with the Court.

Very truly yours,

Steven J. Bolotin

SJB/sjb
cc: Daniel H. Pierce, AIA

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7001 0320 0002 0810 2390

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| **Total Postage & Fees** | $ |

Postmark Here

Return to Steve Bolotin MM LLP 250 Summer St Boston, MA 02210

*Sent To* George Atkins

*Street, Apt. No.; or PO Box No.* 59 Federal Street

*City, State, ZIP+4* Salem, MA 01970

PS Form 3800, January 2001 — See Reverse for Instructions

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

George Atkins, Esq.
Ronan, Segal & Harrington
59 Federal Street
Salem, MA 01970

*COMPLETE THIS SECTION ON DELIVERY*

A. Received by *(Please Print Clearly)* C CAVDRAVLM

B. Date of Delive. 8/11/7

C. Signature
X D. Sandaale ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)* 7001 0320 0002 0810 2390

PS Form 3811, March 2001 Domestic Return Receipt 102595-01-M-1424